# 18-691

*To Be Argued By*:
EUN YOUNG CHOI

## United States Court of Appeals

### FOR THE SECOND CIRCUIT
### Docket No. 18-691

UNITED STATES OF AMERICA,

*Appellee*,

—v.—

ROSS WILLIAM ULBRICHT, also known as Dread Pirate
Roberts, also known as Silk Road, also known as
Sealed Defendant 1, also known as DPR,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR THE UNITED STATES OF AMERICA

GEOFFREY S. BERMAN,
*United States Attorney for the
Southern District of New York,
Attorney for the United States
of America.*
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2200

EUN YOUNG CHOI,
ANNA M. SKOTKO,
  *Assistant United States Attorneys,
    Of Counsel.*

# TABLE OF CONTENTS

PAGE

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.  The Investigation, the Proceedings Below, and the Direct Appeal. . . . . . . . . . . . . . . . . . 4

    B.  Ulbricht's Post-Appeal Motions . . . . . . . . . . 7

ARGUMENT:

    The District Court Properly Denied Ulbricht's Request for an Extension of Time to File a Rule 33 Motion . . . . . . . . . . . . . . . . . . . . . . . 9

    A.  Applicable Law . . . . . . . . . . . . . . . . . . . . . . . 9

    B.  Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        1.  The Pen/Trap Data is Not "Newly Discovered" Evidence. . . . . . . . . . . . . . 13

        2.  The Pen/Trap Data is Not Material and Not Likely to Lead to Ulbricht's Acquittal. . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

ii

PAGE

# TABLE OF AUTHORITIES

*Cases*:

*Bolarinwa v. Williams,*
  593 F.3d 226 (2d Cir. 2010) . . . . . . . . . . . . . . . . 11

*Brady v. Maryland,*
  373 U.S. 83 (1963). . . . . . . . . . . . . . . . . . . . . . . . 18

*Eberhart v. United States,*
  546 U.S. 12 (2005). . . . . . . . . . . . . . . . . . . . . . . . 10

*Headley v. Tilghman,*
  53 F.3d 472 (2d Cir. 1995) . . . . . . . . . . . . . . . . . 12

*Kyles v. Whitley,*
  514 U.S. 419 (1995). . . . . . . . . . . . . . . . . . . . . . . 18

*Massaro v. United States,*
  538 U.S. 500 (2003). . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Alessi,*
  638 F.2d 466 (2d Cir. 1980) . . . . . . . . . . . . . . . . 14

*United States v. Boesen,*
  599 F.3d 874 (8th Cir. 2010) . . . . . . . . . . . . . . . 11

*United States v. Colasuonno,*
  697 F.3d 164 (2d Cir. 2012) . . . . . . . . . . . . . . . . 12

*United States v. Coppa,*
  267 F.3d 132 (2d Cir. 2001) . . . . . . . . . . . . . . . . 18

*United States v. DiPietro,*
  278 F. App'x 60 (2d Cir. 2008) . . . . . . . . . . . . . . 11

iii

PAGE

*United States v. Ferguson*,
 246 F.3d 129 (2d Cir. 2001) . . . . . . . . . . . . . . 10, 18

*United States v. Forbes*,
 790 F.3d 403 (2d Cir. 2015) . . . . . . . .  9, 11, 12, 14

*United States v. Ghilarducci*,
 480 F.3d 542 (7th Cir. 2007) . . . . . . . . . . . . . . . . 11

*United States v. Green*,
 595 F.3d 432 (2d Cir. 2010) . . . . . . . . . . . . . . . . 12

*United States v. Guang*,
 511 F.3d 110 (2d Cir. 2007) . . . . . . . . . . . . . . 10, 18

*United States v. Iodice*,
 525 F.3d 179 (2d Cir. 2008) . . . . . . . . . . . . . . . . 12

*United States v. James*,
 712 F.3d 79 (2d Cir. 2013) . . . . . . . . . . . .  9, 11, 14

*United States v. Johnson*,
 821 F.3d 1194 (10th Cir. 2016) . . . . . . . . . . . . . . 11

*United States v. Owen*,
 500 F.3d 83 (2d Cir. 2007) . . . . . . . . . . . . . . . . . 14

*United States v. Paulino*,
 445 F.3d 211 (2d Cir. 2006) . . . . . . . . . . . . . . . . 18

*United States v. Rigas*,
 583 F.3d 108 (2d Cir. 2009) . . . . . . . . . . . . . . . . 12

*United States v. Rivernider*,
 828 F.3d 91 (2d Cir. 2016) . . . . . . . . . . . . . . . . . 15

*United States v. Robinson*,
 430 F.3d 537 (2d Cir. 2005) . . . . . . . . . . . . . . . . 10

iv

PAGE

*United States v. Salameh,*
  152 F.3d 88 (2d Cir. 1998) . . . . . . . . . . . . . . . . . 15

*United States v. Stewart,*
  433 F.3d 273 (2d Cir. 2006) . . . . . . . . . . . . . . 9, 10

*United States v. Tavarez,*
  654 F. App'x 30 (2d Cir. 2016) . . . . . . . . . . . . . . 15

*United States v. Ulbricht,*
  858 F.3d 71 (2d Cir. 2007) . . . . . . . . . . . . . *passim*

*United States v. Wong,*
  78 F.3d 73 (2d Cir. 1996) . . . . . . . . . . . . . . . 10, 12

*Statutes, Rules & Other Authorities*:

Fed. R. Crim. P. 33 . . . . . . . . . . . . . . . . . . . . . . *passim*

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket No. 18-691

―――――――

UNITED STATES OF AMERICA,

*Appellee,*

―v.―

ROSS WILLIAM ULBRICHT, also known as Dread Pirate
Roberts, also known as Silk Road, also known as
Sealed Defendant 1, also known as DPR,

*Defendant-Appellant.*

―――――――

## BRIEF FOR THE UNITED STATES OF AMERICA

―――――――

### Preliminary Statement

Defendant Ross William Ulbricht appeals from (1)
an order entered on February 5, 2018, denying his re-
quest for an extension of time to submit a motion for a
new trial pursuant to Rule 33 of the Federal Rules of
Criminal Procedure; and (2) an order entered on Feb-
ruary 21, 2018, denying his request for reconsidera-
tion, both entered by the Honorable Katherine B. For-
rest, United States District Judge, in the Southern
District of New York.

2

Superseding Indictment S1 14 Cr. 68 (KBF) (the "Indictment") was filed on August 21, 2014, charging Ulbricht in seven counts. Count One charged Ulbricht with distributing and aiding and abetting the distribution of narcotics, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A) & 2; Count Two charged him with doing so by means of the Internet, in violation of 21 U.S.C. §§ 841(h) & (b)(1)(A); Count Three charged him with conspiring to distribute narcotics, in violation of 21 U.S.C. § 846; Count Four charged him with engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848; Count Five charged him with conspiring to obtain unauthorized access to a computer, for purposes of commercial advantage and private financial gain and in furtherance of other criminal and tortious acts, in violation of 18 U.S.C. §§ 1030(a)(2) & (b); Count Six charged him with conspiring to traffic in fraudulent identification documents, in violation of 18 U.S.C. § 1028(f); and Count Seven charged him with conspiring to launder money, in violation of 18 U.S.C. § 1956(h).

Trial commenced on January 13, 2015, and ended on February 4, 2015, when the jury found Ulbricht guilty on all counts. On or about March 6, 2015, Ulbricht filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, which Judge Forrest denied by an Opinion and Order dated April 27, 2015.

On May 29, 2015, Judge Forrest sentenced Ulbricht to a term of life imprisonment, ordered forfeiture in the amount of $183,961,921, and imposed a $500 mandatory special assessment. A judgment of conviction was

3

entered on June 1, 2015. Ulbricht timely appealed, and on May 31, 2017, this Court unanimously affirmed the judgment of conviction. *United States v. Ulbricht*, No. 15-1815, 858 F.3d 71 (2d Cir. 2007) (Newman, Lynch, Droney, JJ.). On December 22, 2017, Ulbricht filed a petition for a writ of certiorari with the Supreme Court, which was denied on June 28, 2018. *See Ulbricht v. United States*, No. 17-950 (U.S.).

On February 5, 2018, while his petition for certiorari was pending, Ulbricht filed a series of motions, including *inter alia*, a request for an extension of time to file a motion for a new trial pursuant to Rule 33 based on purportedly new evidence. (A. 41-46).[1] The District Court denied the motion later that day. (A. 52). Ulbricht subsequently filed a motion for rehearing (A. 83-93), which was also denied. (A. 94).

––––––––––

[1] "Br." refers to Ulbricht's brief in this appeal; "A." refers to the appendix filed with that brief; "No. 15-1815, S." refers to the sealed appendix filed with Ulbricht's direct appeal; "No. 17-950 (U.S.)" refers to the Supreme Court's docket for Ulbricht's petition for a writ of certiorari; "No. 18-643, Dkt." refers to an entry in this Court's docket for Ulbricht's petition for a writ of mandamus; "Dkt." refers to an entry on the District Court's docket for this case; "Tr." refers to the corrected and final trial transcript; and "PSR" or "Presentence Report" refers to the Presentence Investigation Report prepared by the United States Probation Office ("Probation Office") in connection with Ulbricht's sentencing.

4

Ulbricht is currently serving his sentence.

## Statement of Facts

From early 2011 through October 1, 2013, Ulbricht owned and operated a vast online black market, known as "Silk Road," through which thousands of vendors sold approximately $183 million dollars of illegal drugs, as well as a variety of other goods and services. (*See, e.g.,* PSR ¶ 12). Ulbricht designed and created Silk Road to facilitate illegal transactions anonymously and beyond the reach of law enforcement, including by hosting the site on the Onion Router (or "Tor") network, which hides the identities of its users and their IP addresses, and by requiring vendors and customers to do business in Bitcoin, a virtual currency designed to be as anonymous as cash. (*See, e.g., id.*). During its operation, Ulbricht oversaw and managed all aspects of Silk Road, including maintaining the computer infrastructure, determining vendor and customer policies, deciding what could be sold on the site, managing a staff of online administrators and computer programmers, and controlling the profits, from which he personally earned millions of dollars. (*See, e.g., id.*). A comprehensive statement of facts underlying Ulbricht's conviction is contained in this Court's opinion affirming his conviction. *See generally Ulbricht*, 858 F.3d 71.

## A. The Investigation, the Proceedings Below, and the Direct Appeal

Over the course of investigating Ulbricht and his Silk Road enterprise, the Government sought and obtained five orders for pen register and trap and trace

5

data ("Pen/Trap"), *see* 18 U.S.C. §§ 3121-27, as follows: an order for data related to Ulbricht's Gmail account, dated September 11, 2013 (13 Mag. 2209); an order for data related to a certain IP address assigned to a Comcast account, dated September 16, 2013 (13 Mag. 2228) (No. 15-1815, S. 67-78); two orders for data relating to a wireless router at Ulbricht's San Francisco residence, dated September 19, 2013 (13 Mag. 2258) (No. 15-1815, S. 93-99) and September 20, 2013 (13 Mag. 2274) (No. 15-1815, S. 134-141); and an order for data relating to five devices, identified by MAC addresses, dated September 20, 2013 (13 Mag. 2275) (No. 15-1815, S. 125-132). In February 2014, as part of its first discovery production, the Government provided to Ulbricht's counsel the various applications, warrants, and orders associated with the investigation, including the applications of all five Pen/Trap orders. (*See, e.g.,* Dkt. 16, 17, 23 at 10-14, 38 at 3).

In response to a defense request for "any and all data obtained from pen registers judicially authorized in this case," the Government noted in a letter dated September 23, 2014, that it had "provided all available pen register data used to detect Ulbricht's email and Internet activity in September 2013, as well as pen register data received from Icelandic law enforcement authorities concerning [two servers related to Silk Road]." (A. 65). The Government, however, informed defense counsel that it was not going to disclose any other pen register information, "on the ground that such information is not material to the defense or otherwise required to be produced under Rule 16." (A. 65).

6

In his pretrial motions, Ulbricht sought to suppress various pieces of evidence, including but not limited to the data from all five Pen/Trap orders, and the search warrant for Ulbricht's laptop, on Fourth Amendment grounds. (*See* Dkt. 46). The District Court denied Ulbricht's motions to suppress. (Dkt. 89).

At trial, the Government presented "overwhelming evidence that Ulbricht created Silk Road in 2011 and continued to operate the site throughout its lifetime." *Ulbricht*, 858 F.3d at 87. The evidence at trial consisted of testimony by law enforcement agents who spent years investigating the operation of Silk Road through undercover purchases and online communications with the administrator, who used the alias "Dread Pirate Roberts" (or "DPR"). *See, e.g., id.* at 86-89. Despite the administrator's efforts to mask the location of Silk Road through Tor, law enforcement agents ultimately identified the servers hosting Silk Road (and seized the trove of data they contained, documenting thousands of transactions and communications through the site and its associated forums). (*See, e.g.,* PSR ¶ 59). Ulbricht was initially identified as "DPR" through connections between his personal email account and online posts about Silk Road. After identifying him, agents were able to catch Ulbricht red-handed, arresting him in a public library while he was logged into Silk Road from his laptop as "DPR," administering the site and talking online as "DPR" with an undercover agent. That laptop, in turn, contained journals describing how Ulbricht created and operated the site (corroborated by testimony from one of Ulbricht's college friends), records related to Silk

Road's operation, and Bitcoin "wallets" containing millions of dollars' worth of Bitcoins. (*See, e.g.,* PSR ¶¶ 55-57; Tr. 1114-38, 1144-61).

On February 4, 2015, the jury found Ulbricht guilty on all counts. On or about March 6, 2015, Ulbricht filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, which Judge Forrest denied by an Opinion and Order dated April 27, 2015.

On May 29, 2015, Judge Forrest sentenced Ulbricht to a term of life imprisonment, ordered forfeiture in the amount of $183,961,921, and imposed a $500 mandatory special assessment. A judgment of conviction was entered on June 1, 2015. Ulbricht timely appealed. On June 9, 2016, pursuant to the Government's request, the District Court unsealed, *inter alia*, the five Pen/Trap applications and orders to allow the Government to respond to Ulbricht's arguments on direct appeal. (Dkt. 292). On May 31, 2017, this Court unanimously affirmed the judgment of conviction. *Ulbricht*, No. 15-1815, 858 F.3d 71. On December 22, 2017, Ulbricht filed a petition for a writ of certiorari with the Supreme Court, which was denied on June 28, 2018. *See Ulbricht*, No. 17-950.

## B.  Ulbricht's Post-Appeal Motions

On February 5, 2018, while his petition for certiorari was pending, Ulbricht filed a series of motions, including a request for an extension of time to file a Rule 33 motion based on purportedly new evidence related to the five Pen/Trap orders. (A. 41-46). The District Court denied the motion for additional time to file a Rule 33 motion later that day. (A. 52, 82).

8

In denying the request for an extension of time, the District Court noted that a "Rule 33 motion is not an opportunity to relitigate that which has been litigated, or to engage in a fishing expedition for new evidence." (*Id.*). Noting that it appreciated that new counsel was not involved in the trial, Judge Forrest explained that "the very evidence to which [new counsel] now points (that the FBI was monitoring the defendant's online movements) was explicitly known at the trial, thus rendering the purportedly potentially new evidence as 'not new news' to the defense." (*Id.* (citing Tr. 319, *et seq.*)). Finally, the District Court found that current counsel's assertion that he was unable to get the defense file from Ulbricht's prior trial counsel "does not suggest any basis for a new trial," in part because whatever was in the defense file was "necessarily *known* to prior counsel." (*Id.*). For those reasons, the District Court concluded that no good cause to delay the deadline had been shown, and denied the motion. (*Id.*). On February 20, 2018, Ulbricht filed a motion for reconsideration (A. 83-93), which the District Court denied (A. 94).

Ulbricht also filed a motion to disqualify Judge Forrest (Dkt. 300-04) and a request for the partial unsealing of magistrate files relating to certain applications for the Pen/Trap data (Dkt. 305-06), both of which the District Court also denied. (Dkt. 310-11). On March 8, 2018, Ulbricht filed a petition for a writ of mandamus ordering that Ulbricht's convictions be vacated and that Judge Forrest be recused from further proceedings, relying in part on the District Court's denial of Ulbricht's post-conviction motions as evidence of its bias. (*See* No. 18-643, Dkt. 4). This Court denied the

9

petition by order dated June 7, 2018, without further briefing from the Government. (No. 18-643, Dkt. 34).

**A R G U M E N T**

**The District Court Properly Denied Ulbricht's Request for an Extension of Time to File a Rule 33 Motion**

### A. Applicable Law

Rule 33 provides, in relevant part, that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Where a motion for a new trial is based on a claim of newly discovered evidence, the defendant bears a particularly high burden, for relief may only be granted upon a showing that (1) the evidence is newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal. *United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013) (citation and quotation marks omitted); *see also United States v. Forbes*, 790 F.3d 403, 406-07 (2d Cir. 2015). This Court has recognized that a district court's discretion in evaluating a Rule 33 motion "is broad because its vantage point as to the determinative factor —whether newly discovered evidence would have influenced the jury—has been informed by the trial over which it presided." *United States v. Stewart*, 433 F.3d

273, 296 (2d Cir. 2006). Given the deference owed to a jury's verdict, however, this Court has cautioned that district courts should exercise their Rule 33 authority only "sparingly and in the most extraordinary circumstances." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (internal quotation marks omitted). In other words, a new trial motion "is ordinarily not favored" and "should be granted only with great caution." *United States v. Wong*, 78 F.3d 73, 79 (2d Cir. 1996) (citations and quotation marks omitted); *see also Stewart*, 433 F.3d at 296 (recognizing that new trial motions based on new evidence should be granted only "with great caution and in the most extraordinary circumstances" (citation and quotation marks omitted)). "The test is whether it would be a manifest injustice to let the guilty verdict stand." *United States v. Guang*, 511 F.3d 110, 119 (2d Cir. 2007) (citations and quotation marks omitted).

A motion for a new trial based on newly discovered evidence "must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). Although Rule 33 is an "inflexible claim-processing rule," it is not "jurisdictional" and is therefore subject to the time-modification provisions of Rule 45(b) of the Federal Rules of Criminal Procedure. *Eberhart v. United States*, 546 U.S. 12, 13 (2005) (per curiam) (explaining that if Rule 33 were "jurisdictional," *i.e.*, created by statute, it would not be subject to waiver or forfeiture and could be raised for the first time on appeal); *see also United States v. Robinson*, 430 F.3d 537, 541 (2d Cir. 2005) ("The time limitations specified in Rule 33 are read in conjunction with Rule 45, which establishes how to compute and extend time."). Rule

11

45(b), in turn, states that "[w]hen an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made [ ] before the originally prescribed or previously extended time expires." Fed. R. Crim. P. 45(b).

Although this Court does not appear to have explicitly ruled on the proper standard of review for a district court's denial of a motion for an extension of time to file a Rule 33 motion, analogous cases from this Court and its sister Circuits establish that such denials should be reviewed for abuse of discretion. *See United States v. Ghilarducci*, 480 F.3d 542, 550 (7th Cir. 2007) (denial of motion for an extension of time to file Rule 33 motion); *cf. Bolarinwa v. Williams*, 593 F.3d 226, 230 (2d Cir. 2010) (district court's grant of extension of time for filing an appeal reviewed for abuse of discretion); *Forbes*, 790 F.3d at 411 ("We review a district court's denial of a post-trial Rule 33 hearing or discovery for abuse of discretion."); *United States v. Boesen*, 599 F.3d 874, 879 (8th Cir. 2010) (district court's excusable-neglect determination in denying untimely Rule 33 motion reviewed for abuse for discretion); *United States v. Johnson*, 821 F.3d 1194, 1199 (10th Cir. 2016) (district court's decision not to consider an untimely motion for a new trial reviewed for abuse of discretion). A district court's denial of a Rule 33 motion for a new trial, and denials of motions for reconsideration generally, are reviewed by this Court for abuse of discretion. *See James*, 712 F.3d at 107 (denial of Rule 33 motion for new trial); *United States v. DiPietro*, No. 07-5344-cr, 278 F. App'x 60, at *2 (2d Cir. 2008) (denial of Rule 33 motion and motion

12

for reconsideration thereof). "A district court abuses or exceeds the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Forbes*, 790 F.3d at 406 (quotation marks and alterations omitted). In reviewing for abuse of discretion, this Court is "free to affirm on any ground that finds support in the record, even if it was not the ground upon which the trial court relied." *Headley v. Tilghman*, 53 F.3d 472, 476 (2d Cir. 1995); *see also United States v. Green*, 595 F.3d 432, 436 (2d Cir. 2010). Finally, where findings of fact are made in connection with the denial of a Rule 33 motion, they are reviewed for clear error, *Wong*, 78 F.3d at 78; *United States v. Rigas*, 583 F.3d 108, 125 (2d Cir. 2009), which is established "only when the record as a whole leaves it with 'the definite and firm conviction that a mistake has been committed.'" *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012) (quoting *United States v. Iodice*, 525 F.3d 179, 185 (2d Cir. 2008)).

### B. Discussion

The District Court did not abuse its discretion in denying Ulbricht's request for an extension of time to file a Rule 33 motion, because Ulbricht has not established that the Pen/Trap data he seeks constitute "newly discovered" evidence that is material to his defense, or likely would have led to his acquittal at trial.

13

Ulbricht characterizes the purportedly "newly discovered" evidence as (1) Pen/Trap data for three of the orders "which should be contained in the three sealed magistrate's files";[2] (2) "additional, new [Pen/Trap] data which the government had just discovered and promised to produce to the defense"; and (3) "evidence" from a book regarding Ulbricht's conviction, *American Kingpin*, which "revealed" that the investigating agency was "invading" Ulbricht's residence to "monitor his location, movements and online activity within his residence" through the use of the Pen/Trap orders. (Br. 10, 12, 14). Ulbricht's challenges are meritless. The existence of the Pen/Trap data was known to Ulbricht as early as February 2014, and the arguments he puts forth now about the purported import and use of the Pen/Trap data were raised by Ulbricht and rejected by the District Court and this Court on direct appeal. As such, the District Court did not abuse its discretion in denying both Ulbricht's motion for additional time to file a futile Rule 33 motion, and his request for reconsideration of that denial.

## 1. The Pen/Trap Data is Not "Newly Discovered" Evidence

As the District Court correctly noted, the Pen/Trap data sought by post-conviction counsel cannot be viewed as evidence "newly discovered at trial," because

---

[2] All five Pen/Trap applications and orders were unsealed on June 9, 2016, to allow the Government to respond to Ulbricht's arguments on direct appeal. (Dkt. 292).

14

both its existence and its use by investigators were in fact known to Ulbricht's trial counsel. *James,* 712 F.3d at 107. Ulbricht was on notice of the existence of all five Pen/Trap orders, and thus the data that was collected therefrom, prior to trial. (*See, e.g.,* A. 65). This is evidenced, for instance, by the fact that in August 2014, trial counsel moved to suppress data for all five Pen/Trap orders. (*See* Dkt. 48 at 37-48). This Court has "long held that in order to constitute newly discovered evidence, not only must the defendant show that the evidence was discovered after trial, but he must also demonstrate that the evidence 'could not with due diligence have been discovered before or during trial.'" *Forbes*, 790 F.3d at 408-09 (quoting *United States v. Alessi*, 638 F.2d 466, 479 (2d Cir. 1980)). Consequently, to the extent that Ulbricht asserts that the denial of an extension of time was an abuse of discretion because he might have been able to further collect additional Pen/Trap data with such an extension, his argument must fail. As this Court stated, "previously known, but newly available, evidence is not newly discovered within the meaning of Rule 33," because "[o]ne does not 'discover' evidence after trial that one was *aware of* prior to trial." *Forbes*, 790 F.3d at 407 (quoting *United States v. Owen*, 500 F.3d 83, 89-90 (2d Cir. 2007)). Against this backdrop, the District Court did not err in concluding that the Pen/Trap data was "necessarily *known* to prior counsel," (A. 52) and thus could not constitute "newly discovered" evidence pursuant to Rule 33.

Ulbricht's complaint that trial counsel failed to adequately assist in Ulbricht's post-conviction efforts, in-

15

cluding by failing to timely provide the complete defense file (*see* Br. 16-21), should be rejected in light of the procedural posture of this appeal. "Courts of appeals are generally 'reluctant to address ineffectiveness claims on direct review' because 'the constitutional sufficiency of counsel's performance is usually unripe for seasoned retrospection' on direct review." *United States v. Rivernider*, 828 F.3d 91, 106 (2d Cir. 2016) (quoting *United States v. Salameh*, 152 F.3d 88, 160 (2d Cir. 1998)). This is especially true here, because the record as it presently stands "is not sufficiently developed to allow [this Court] to review an ineffective assistance claim." *Id.* Any "evidence of alleged conflicts of interests," *Massaro v. United States*, 538 U.S. 500, 505 (2003), which Ulbricht suggests arose from prior counsel's "abandon[ment]" of Ulbricht (Br. 17), "might be found only in attorney-client correspondence or other documents" that have "not [been] introduced." *Massaro*, 538 U.S. at 505. Accordingly, this Court should not consider the merits of Ulbricht's arguments concerning the performance or actions of trial counsel in this appeal. *See, e.g.*, *United States v. Tavarez*, No. 15-1300-cr, 654 F. App'x 30, 31 (2d Cir. 2016) (holding that the Court "cannot decide" ineffective-assistance claim on direct appeal because "there is no record of the plea discussions between the Government and [defendant]'s counsel or between [defendant] and counsel regarding whether to accept the plea agreement").

Because the Pen/Trap data cited by Ulbricht does not constitute "newly discovered" evidence under Rule 33, the District Court properly denied Ulbricht's request for additional time to file a futile Rule 33 motion.

16

### 2. The Pen/Trap Data is Not Material and Not Likely to Lead to Ulbricht's Acquittal

Ulbricht also cannot establish that the Pen/Trap data is either material or would likely lead to his acquittal. Any materiality of the evidence he seeks is at best speculative, as is evidenced by Ulbricht's own characterization of its import in conditional terms. (*See, e.g.,* Br. 14 (stating sought evidence "*may* be material" and "*may* be relevant to his defense" (emphases added))). Ulbricht first surmises that the Pen/Trap data could be material if the Government misrepresented the data in its affidavits submitted to procure warrants. (*See* Br. 11 ( "*If* the search and arrest warrants were shown to be based on misrepresentations of PRTT data . . . and on results from undisclosed searches of Ulbricht's residence . . . Ulbricht's convictions *could be* shown to be based on evidence which should never have been presented at trial." (emphases added))). This conclusory assertion as to the possibility of Government misconduct is pure speculation. The District Court did not abuse its discretion in refusing to rely upon such baseless accusations to grant additional time for Ulbricht to file a motion for a new trial.

Ulbricht next argues that the Pen/Trap data may have been obtained in violation of his Fourth Amendment rights and, had it been excluded on that basis, Ulbricht might have been acquitted at trial. (*See* Br. 15 ("*If* that evidence was obtained in violation of Ulbricht's Fourth Amendment rights, and *had* it been excluded from trial, the trial outcome would likely have been very different" (emphases added))). This ar-

17

gument also fails. Ulbricht previously (and unsuccessfully) advanced the same argument in pre-trial motions before the District Court and on direct appeal before this Court. Specifically, in his pre-trial motion to suppress, Ulbricht asserted that the Pen/Trap orders constituted "an invasion of private communications" in contravention of the Fourth Amendment in that they "were sought in order to confirm the laptop's connection to the Internet at specific times and dates, their duration, and the laptop's physical location when it logged on and off." (Dkt. 48 at 40). Trial counsel also asserted that monitoring Ulbricht's "internet activity in conjunction with his physical location" in this manner was "the functional equivalent of geo-locating." (Dkt. 48 at 43). Indeed, trial counsel specifically argued that the applications for the Pen/Trap orders "did not reveal to the issuing magistrate judges the true purpose," which, according to Ulbricht, was an unlawful "attempt[] to triangulate Mr. Ulbricht's internet activity in conjunction with his physical location and administrative interaction on the Silk Road servers." (Dkt. 48 at 45). After the District Court denied his motion (Dkt. 89), Ulbricht argued these points again on his direct appeal. This Court rejected Ulbricht's arguments and concluded that investigators' use of Pen/Trap data "to draw inferences about whether someone is making telephone calls or accessing websites from inside his or her home" does not render use of Pen/Trap orders "constitutionally suspect." *Ulbricht*, 858 F.3d at 98 (rejecting Ulbricht's argument that Pen/Trap data violated the Fourth Amendment "because it might reveal when and how Ulbricht used his computer when he was at home"). Finally, Ulbricht advanced the same

18

argument regarding the unconstitutionality of the Pen/Trap data in his petition for a writ of certiorari to the Supreme Court (*see* No. 17-950 (U.S.) (Dec. 22, 2017)), which was denied on June 28, 2018. Given the failure of Ulbricht on no fewer than three prior occasions before three different courts to establish the "manifest injustice" attendant to the Government's use of the Pen/Trap data, *see Guang*, 511 F.3d at 119, Ulbricht cannot establish the "most extraordinary circumstances" to warrant an extension of time to file a Rule 33 motion, *Ferguson*, 246 F.3d at 134.

Finally, Ulbricht's suggestion that the purported failure of the Government to produce the Pen/Trap data constitutes a violation of its discovery obligations under *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (*see* Br. 15), is also meritless. To begin, the Pen/Trap data is "not considered to have been suppressed within the meaning of the *Brady* doctrine" because "the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence." *United States v. Paulino*, 445 F.3d 211, 224 (2d Cir. 2006). Moreover, Ulbricht cannot show that the Pen/Trap data would be "favorable to the defendant" or that any purported failure by the Government to disclose the evidence resulted in prejudice, as would be required to establish a *Brady* violation. *See United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001). And Ulbricht cannot establish that the Pen/Trap data was "material" in that there was a "reasonable probability of a different result" had it been disclosed, *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), for the same reason he cannot establish materiality in the Rule 33 context.

19

Because Ulbricht can neither establish that the Pen/Trap data was material to his defense or would likely lead to his acquittal, the District Court correctly observed that any potential Rule 33 motion was simply "an opportunity to relitigate that which has been litigated," and properly denied Ulbricht's motion for additional time to file such a futile motion. (A. 52).

## CONCLUSION

**The orders of the District Court should be affirmed.**

Dated:     New York, New York
           September 17, 2018

                    Respectfully submitted,

                    GEOFFREY S. BERMAN,
                    *United States Attorney for the*
                    *Southern District of New York,*
                    *Attorney for the United States*
                    *    of America.*

EUN YOUNG CHOI,
ANNA M. SKOTKO,
    *Assistant United States Attorneys,*
        *Of Counsel.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 4,655 words in this brief.

GEOFFREY S. BERMAN,
*United States Attorney for the*
*Southern District of New York*

By: ANNA M. SKOTKO,
*Assistant United States Attorney*